# Richmond

JOHN D. GORDAN v. LITTLETON W. TAZEWELL, ADMR., ETC.

November 19, 1945.

Record No. 2953.

Present, All the Justices.

The opinion states the case.

*William G. Maupin*, for the plaintiff in error.

*Williams, Cocke & Tunstall*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

This is an action by John D. Gordan, a real estate broker, to recover compensation of Littleton W. Tazewell, administrator d.b.n.c.t.a. of the estate of Anne E. T. Bradford for the sale of 1,600 acres of land to the Navy Department of the United States of America. There was a trial by jury which resulted in a verdict for $5,000 in favor of Gordan, which was set aside by the trial court and a final judgment entered for the defendant.

The tract of land lies in Princess Anne county, Virginia, and was formerly owned in her lifetime by Anne E. T. Bradford, and of said tract of land, she died seized and possessed. By her last will her executors were given control over all of her real estate, and they were also given the power to sell and convey it or any part of it. The executors died and in 1929 Littleton W. Tazewell qualified as administrator d.b.n.c.t.a. and thereafter became clothed with the same power and authority with respect to the said real estate which the executors formerly possessed.

The substantial and material portion of the notice of motion for judgment reads as follows:

"That on or about the 27th day of July, 1941, the said Littleton W. Tazewell specifically requested me the undersigned John D. Gordan to use my best efforts to induce the Navy Department of the Government of the United States

to acquire the said large tract or parcel of land in Princess Anne county, Virginia, hereinabove referred to in whole or in part, and you then and there agreed with me that if I should negotiate with said Navy Department to procure the purchase or acquisition of said land or any part thereof, and if my negotiations with said Navy Department resulted in the purchase or acquisition by the United States of America of said tract or parcel of land or any portion thereof, you, the said Littleton W. Tazewell, as administrator d.b.n.c.t.a. of the estate of Anne E. T. Bradford, would pay to me the usual and customary commission payable to brokers for such a sale. And I, the undersigned, John D. Gordan, requested that you obtain for me, and you thereafter delivered to me a plat of the said property necessary and convenient to be used in negotiating with the Navy Department for the purchase or acquisition of said tract or parcel of land by the United States of America; and I then and there agreed with you, the said Littleton W. Tazewell as administrator d.b.n.c.t.a. of the estate of Anne E. T. Bradford, that I would in consideration of your agreement to pay to me the usual and customary commissions payable to real estate brokers for similar transactions, use my best efforts to induce the Navy Department of the United States Government to purchase or acquire said tract of land in whole or in part for the United States of America, and pursuant to such agreement I immediately began and thereafter continued negotiations with and brought to the attention of said Navy Department of the United States Government the availability and convenience of said tract or parcel of land for the uses and purposes of said Navy Department, and furnished said plat of said property to said Navy Department and endeavored to induce said Navy Department to purchase or acquire the same for the United States of America; and the said negotiations and efforts of me, the undersigned John D. Gordan, were successful; and almost immediately after the inception of said negotiations and efforts and the communication by the undersigned to said Navy Department

of the availability of said tract or parcel of land and its convenience for the uses and purposes of the Navy Department, the said Navy Department began, on its part, negotiations for the acquisition of the whole of said tract or parcel of land, which negotiations were concluded by the acquisition of the whole thereof by the United States of America at the sum and price of, to-wit: $276,502.00, which said last mentioned sum has been paid to you, Littleton W. Tazewell, administrator d.b.n.c.t.a. of the estate of Anne E. T. Bradford, by the United States of America.

"And by reason of the premises, you, the said Littleton W. Tazewell, administrator d.b.n.c.t.a. of the estate of Anne E. T. Bradford, became and are indebted to me the undersigned, John D. Gordan, for the usual and customary commissions payable to real estate brokers for similar transactions, to-wit, in the sum of $27,650.20, with legal interest thereon from the first day of March, 1942, until paid, but to pay the same or any part thereof you have hitherto wholly neglected and refused, though often requested to pay the same; and for the said sum of $27,650.20 with interest as aforesaid, I shall move the court for judgment against you as hereinabove set out."

This entire tract of land in 1941 was still owned by the estate of Anne E. T. Bradford. It fronted for some distance on the south shore of the Chesapeake Bay. There had been a number of efforts made by Mr. Tazewell to dispose of it to the United States in connection with its naval activities but all of these efforts had proved fruitless.

The plaintiff, John D. Gordan, is and had been for thirty-six years a licensed real estate broker in the city of Norfolk.

The theory of the plaintiff is that he was employed by Mr. Tazewell as a real estate broker to interest the Navy Department in the purchase or acquisition of the tract of land. The plaintiff claims that under the agreement it was not incumbent upon him to actually sell the land to the Navy Department. His sole obligation, according to his theory, was simply to awaken an interest in the Navy De-

partment, and if later the Navy Department acquired the land either by sale or by eminent domain he would have earned his brokerage. The Navy Department did acquire the land by eminent domain in proceedings which began a short time after the plaintiff had begun his efforts to interest the Navy Department. By reason of these conditions the plaintiff claims that he had a special contract with the owner and that his compensation is controlled by this special contract and not by the ordinary rule governing the sale of real estate by a broker under which he must produce a purchaser ready, willing and able to purchase the property in accordance with the terms prescribed by the owner before he is entitled to the commissions on the sale. He also contends that his agency was terminated by Mr. Tazewell without just cause after he had begun his negotiations with the Navy Department, and that still later Mr. Tazewell conducted the negotiations with the Navy Department himself without permitting him, the plaintiff, to participate, refusing to recognize him as the agent in the transaction. For his alleged unjustified dismissal of the plaintiff the latter claims reasonable compensation for his services, up to the time they were terminated, under a *quantum meruit*.

The defendant, on the other hand, maintains that this was the ordinary broker's contract for the sale of real estate and accordingly controlled by the general rule applicable to contracts of this nature; that the plaintiff did not produce a purchaser of the land, and therefore he was not the procuring cause for the acquisition of the land by the Navy Department, that the land was acquired by the United States by eminent domain, not the result of the efforts of the plaintiff but through an entirely different source, and that if the transaction be treated as a sale to the United States the plaintiff was not the procuring cause of the sale, or if it be treated not as a sale he still was not entitled to commissions.

After the evidence had been introduced and a number of instructions granted submitting the respective theories to the

jury it returned a verdict for $5,000 in favor of the plaintiff, which, upon motion of the defendant, the court set aside and entered judgment for the defendant. This is the basis of the only assignment of error.

The evidence in support of the conflicting theories of the case is itself conflicting upon a material point. The plaintiff and his witness testified that the plaintiff was employed by the defendant only "to interest the Navy Department in the acquisition of the Bradford property", while the defendant, Mr. Tazewell, testified that the plaintiff was employed "to sell the Bradford property" to Admiral Simons, Commandant of the Norfolk Naval Base of the Fifth Naval District, and that he expected to pay the plaintiff commissions only in event he made the sale. This conflict in the testimony was settled by the verdict, and we are bound to accept the plaintiff's statement that he was employed not to make the sale but only to interest the Navy Department in the acquisition of the property.

The burden of proof was upon the plaintiff to show that he did actually awaken the interest of the Navy Department in the property. Counsel for the plaintiff in his petition states the "extent of the employment was that the broker should induce the government to acquire it". Nothing was said about the broker's commission, and no price or terms of sale for the tract of land were given the broker by the defendant. The broker requested a plat of the property of the owner, which was furnished.

The plaintiff in his testimony gives the following version of the transaction:

"A. The first conversation I ever had with Mr. Tazewell about the Bradford tract was on the morning of July 27, 1941, when Mr. Tazewell came into my office. He said, 'I want to know if you would be willing to try and interest the Government, interest the Navy Department, in the acquisition of the Bradford property.' At that time I knew the Bradford property in a general way, but I did not know it in a detail way. I told him if he would give me a plat

which would clearly show the acreage and frontage, I would be very glad to, and I said Admiral Simons was the man to take it up with. He said, 'All right, I will get you a plat.' A few days later he came in and brought the plat and gave it to me.

"Q. Was there anything said by him as to the price at which the tract could be sold?

"A. No price was discussed then.

"Q. Was the amount of your compensation discussed at that time?

"A. It was not discussed at all; but I was approached in due course as a real estate broker."

He also stated that this transaction was "like four out of five real estate transactions".

In pursuance of the contract, as testified to by the plaintiff, he wrote to Admiral Simons on July 30, 1941, as follows:

"I am taking liberty of enclosing herewith a white print showing a very large single holding of undeveloped property, fronting two miles upon the Chesapeake Bay, between Lynnhaven Inlet and the Little Creek Terminals of the NYP. & N. Railroad Company. The tract contains approximately 1,600 acres, of which 1,300 acres is high land and 300 acres salt water. The thought in mind in sending this to you is that naval activities here are expanding so rapidly, and living facilities are becoming so restricted, that the Government might consider it expedient to go into, on a large scale, a residential development for the officers of the service and their families. In any event, regardless of purpose would like for you to know that there is available such a large tract of water front property, and that the owner would be glad to consider its sale. The property is known as the Bradford estate, and is at one point traversed by the Shore Drive. With kind regards, I am, Very truly yours, John D. Gordan."

Admiral Simons replied to the foregoing letter on August 11, 1941, as follows:

"I appreciate your letter of July 30, 1941, indicating the availability of approximately 1,600 acres of land between Lynnhaven Inlet and the Little Creek Terminals of the NYP. & N. Railroad Company. It does not appear at the present time that the Navy will have any use for this tract of land. This information, however, will be placed on file and should the need for additional acreage in that vicinity develop, I will be glad to communicate with you. Very truly yours, Manley H. Simons."

The plaintiff testified that his entire endeavor to interest the Navy Department in this tract consisted in writing the single letter to Admiral Simons on July 30, 1941. Some time in the following October the defendant informed the plaintiff that a representative of the United States had come to him (Tazewell) directly about acquiring this tract of land, and from that time on the plaintiff was never recognized as the real estate broker in this case.

Later on the United States instituted proceedings to acquire the land by the right of eminent domain, and paid into court the sum of $235,000 as compensation for the property. On June 3, 1943, an order was entered in the United States District Court for the Eastern District of Virginia confirming the verdict of a jury which had previously been empaneled by which the sum of $273,750 was fixed as just compensation for the fee simple value of the property. Of this amount $4,375 was paid to certain tenants on portions of the property for the value of their unexpired leases. A net recovery to the owners of the Bradford property of $269,375 was paid to the defendant.

It seems that the amount fixed in the jury's verdict was the result of a compromise agreement between counsel for the parties.

One J. C. Pugh, employed as principal civil engineer and designing superintendent of the Fifth Naval District testified that it was his business to select the property best suited for the particular needs of the Navy Department, and that he made a preliminary report to the Navy Department of

the possibilities of this property, and recommended its acquisition. He said he was familiar with the land, because he had "lived here practically all my life", and that he had "fished and hunted and camped" on it. He also knew who the owners were. He further testified that the department approved the recommendation and it was then taken up with the Department of Justice, resulting in the institution of the proceedings of eminent domain. Mr. Pugh testified that he had taken the matter up with Mr. Tazewell in September, and had secured from him a plat of the tract of land, and that his contacts with Mr. Tazewell were made directly by him and not through the intervention of any agency. The decision to acquire the property by eminent domain was finally placed with a Captain Cotter, who operated in one capacity under Admiral Simons, and in another under the Bureau of Docks. This transaction was not referred to Admiral Simons but the authority to proceed came directly from Washington. Mr. Pugh further testified that he had never seen the letter written by Mr. Gordan to Admiral Simons prior to his negotiations with the defendant, and therefore it had no influence upon his (Pugh's) conduct in the matter.

The evidence of Mr. Pugh was not contradicted, and it is the only evidence of who or what caused the United States to acquire the property. It clearly shows that the plaintiff was neither *the* procuring cause nor *a* procuring cause.

The only fair and reasonable conclusion to be drawn from the evidence of the plaintiff himself is that he entered into a contract with the defendant whereby the plaintiff agreed to interest the Navy Department in the tract of land to such an extent that it would buy it. No price, and consequently no terms were mentioned. He testified himself that the agreement was, "that if, as a result of my efforts the Government bought the property, I would be compensated." He also referred to a sale of the property in his letter to Admiral Simons. It is no doubt true that if he only interested the Navy Department in the land without more he

would not be entitled to compensation. It was requisite that the property be acquired by the Navy Department as a result of the interest the plaintiff might stimulate in the Navy Department. He had to induce the Navy to acquire the property. If the property were acquired by the Navy as a result of independent negotiations, and not as a result of anything done by the plaintiff, he would not be entitled to any compensation.

The sole effort of the plaintiff, namely, writing the letter to Admiral Simons, was productive of no results. The Admiral replied to this letter, stating that at the time the Navy Department had no "use for the tract of land". The plaintiff made no further effort to interest the Navy. As it developed, Admiral Simons was not the proper representative to deal with. Captain Cotter had the duty of selecting the land.

The uncontradicted evidence is that the acquisition of the land was brought about by subsequent proceedings in eminent domain after the government representative, Pugh, a stranger to the plaintiff, reported to the Navy Department through Captain Cotter, not through Admiral Simons, the desirability of acquiring the land. Therefore, even if the plaintiff had a special contract with the defendant whereby he, the plaintiff, would be compensated if as a result of the interest he could instil in Admiral Simons or the Navy Department, the Navy Department should acquire it, the plaintiff has failed to prove that he performed his obligation under that contract. All of the evidence is that he did not interest the Navy Department, and that what he actually did to this end was entirely fruitless. On the other hand, it is not contradicted that Pugh, with the approval of Captain Cotter, caused the Navy Department to acquire the property.

Of course the plaintiff is bound by his own testimony which was that his understanding of the agreement was that if, as a result of his efforts the Government bought the property, he would be entitled to compensation. All of the

evidence shows that the acquisition of the property did not result from his efforts in whole or in part.

The plaintiff having failed to sustain by proof that he had performed his obligation under the special contract, he cannot recover under any theory of the case. We therefore are not called upon to decide whether or not property acquired by the United States through proceedings in eminent domain should be considered a sale.

The case of *Mims* v. *Reid*, 286 F. 900, may be distinguished from the one at bar. There Mims, who was not a real estate broker but the proprietor of a hotel at Luray, Virginia, was requested by Dr. Reid, the owner of a mine, to assist in selling it to the "Compton people". Reid said to Mims: "Get some of these fellows and interest them in the property, and let's sell it to them, and I will pay you well for it". Mims said, "Well, Doctor, I will see what I can do." Mr. Bruening was one of the "Compton people", and he and others of his firm came to Mims' hotel at Luray, and Mims talked to Bruening many times in an effort to interest the "Compton people". He succeeded in having Bruening and others inspect the mine, but Bruening, instead of buying the mine for the "Compton people", sold it to the Shenandoah Valley Manganese Company for $125,000. Reid then refused to pay Mims because he did not sell it to the "Compton people".

In that case the work of Mims was clearly a procuring cause of the sale. His efforts, instead of being fruitless as was the case with the plaintiff here, were productive, in that what he did could not be severed from the desired sale which resulted. Without his efforts Bruening would not have sold the mine. In the case at bar, the evidence shows clearly that the efforts of the broker were not successful. They were not a cause for the acquisition of the property by the Navy.

In *Parsons* v. *Heenan*, 104 Okla. 86, 230 P. 502, it was held that a real estate broker could contract with the owner to put the latter in touch with a concern which would purchase the property. There the broker did what he agreed to do and the sale was consummated by the owner with the

concern which the broker introduced to the owner. It was further held that men are free to conduct their own business in their own way and that the owner and broker had the right to contract for a service less than securing a purchaser if they so desired. If they so agreed and the broker complied with the agreement he was held to be entitled to his compensation.

In the other cases cited by the plaintiff in his petition the brokers or other parties seeking compensation had special contracts with the owners which did not require as a condition precedent to their right to compensation that their efforts be the procuring cause of the sale. In that respect they were different from the contract here. In this case it is conceded in the petition of the plaintiff that the contract was that "the broker should induce the government to acquire it", and the plaintiff himself said that the acquisition had to be a result of his efforts.

We are therefore of opinion that the case has been correctly decided, and the judgment of the trial court will be affirmed.

*Affirmed.*

BROWNING, J., dissenting.